

# NUMBER 13-18-00404-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF N.A.A., A CHILD

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides
Memorandum Opinion by Justice Rodriguez**

M.A. appeals the termination of her parental rights to her child N.A.A.[1] By one issue, she argues that her due process rights were violated. We affirm.

### I. BACKGROUND

On January 17, 2017, police found N.A.A. at a bus stop being cared for by "James," a registered sex offender, without M.A. present. N.A.A., who was then a toddler, was

---

[1] We assign pseudonyms to the parties involved in order to protect the identity of the child. *See* TEX. R. APP. P. 9.8.

removed from M.A.'s care by the Texas Department of Family and Protective Services ("the Department"). N.A.A. was found to have scarring on her arms. The Department filed a petition to terminate M.A.'s parental rights.

The trial court assigned M.A. a family service plan. The plan gave M.A. nine basic tasks, which required that M.A.: participate in visitation with N.A.A., submit to random drug testing, provide N.A.A. with basic necessities, participate in a psychological evaluation, provide a stable home free from drugs and violence, refrain from criminal activities that put her child at risk, and other tasks. M.A. signed the plan on a page indicating that she understood the plan and its connotations.[2]

The termination suit was tried to the bench on June 25, 2018. According to the evidence, M.A. moved eighteen times during the eighteen-month pendency of her case. She had been evicted from shelters and apartments, and she was periodically homeless and unemployed. At the time of trial, M.A. was employed by a home health agency. Although her wages were roughly $600 to $800 per month, she often could not afford food or electricity. At one point, she attempted to return to school, but she was unable to complete the coursework. M.A. regularly tested positive for cocaine and methamphetamine during the first nine months of the case and had at times lived with fellow addicts.

---

[2] In particular, the plan stated in capital letters:

TO THE PARENT: THIS IS A VERY IMPORTANT DOCUMENT. ITS PURPOSE IS TO HELP YOU PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT WITHIN THE REASONABLE PERIOD SPECIFIED IN THE PLAN. IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT, YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS MAY BE RESTRICTED OR TERMINATED OR YOUR CHILD MAY NOT BE RETURNED TO YOU. THERE WILL BE A COURT HEARING AT WHICH A JUDGE WILL REVIEW THIS SERVICE PLAN.

Department workers and the court-appointed special advocate testified that M.A.'s unstable and often unsuitable housing was not a fit environment for N.A.A. They explained that M.A.'s visitation with N.A.A. was sporadic and that she did not provide N.A.A. with basic necessities. Multiple witnesses also expressed concern over M.A.'s anger issues. She often threatened Department employees and, on one occasion, threw a chair at them. On another occasion, M.A. had a violent confrontation with her brother in which she smashed his car window. Finally, M.A. had threatened to kill N.A.A.'s foster mother, who provided N.A.A. with a good home and was seeking to adopt her. Many witnesses agreed that although M.A. had made some progress on her service plan, she had pursued it inconsistently and had not completed it.

Particularly relevant to this appeal, psychologist Robert Rios testified that he performed a psychological evaluation on M.A. Rios determined that she had an IQ within the tenth percentile and a fourth-grade ability in reading and math that, he believed, could interfere with her ability to successfully manage a home. He found no significant psychiatric problems.

M.A. testified that she had earnestly tried to complete her service plan, to make amends for her hostile behavior, and to better her living circumstances. She reported that she had not used drugs for nine months and would not renew her past pattern of abuse. According to M.A., she no longer associated with anyone who would put N.A.A. in danger. She also testified that she was pursuing further employment and had recently made efforts to secure electricity, food, toys, and an apartment should N.A.A. be returned to her.

3

At the conclusion of the evidence, the trial court found that M.A. had committed four statutory grounds for termination, including the failure to complete her family service plan, and that termination was in N.A.A.'s best interest. M.A. appeals the termination of her parental rights.

## II. PRESERVATION

By her sole issue, M.A. argues that due process obligated the Department and the trial court to tailor her family service plan to accommodate her intellectual limitations.

M.A. does not explain how the plan should have been modified. She does not identify any specific way in which her family service plan was beyond her comprehension. She does not point to any testimony that she was unable to grasp the basic tasks that were stated in the plan, and she does not propose any accommodation that would have better enabled her to achieve those tasks. Rather, M.A. generally asserts that without some form of accommodation, her due process rights were violated.

Regardless, M.A. did not raise this complaint before the trial court. Under the rules of appellate procedure, a party must present to the trial court a timely request, motion, or objection, state the specific grounds for the complaint, and obtain a ruling. TEX. R. APP. P. 33.1(a). The rules governing error preservation apply in civil cases involving termination of parental rights, just as they apply to "cases in which a complaint is based on constitutional error." *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005). Allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus undercutting the child's interest in a final decision and placement in a safe and stable home. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003).

4

Based on these considerations, due process complaints concerning a parent's inability to comprehend termination-related documents have been held waived where they were not raised before the trial court. *Id.* at 710–11 (holding that father waived his due process argument regarding his inability to read an affidavit relinquishing parental rights); *M.M.V. v. Tex. Dep't of Family & Protective Servs.*, 455 S.W.3d 186, 192 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that parent waived a due process complaint concerning her inability to read a family service plan); *In re J.P.*, 196 S.W.3d 434, 438 (Tex. App.—Dallas 2006, no pet.) (similar). Consequently, M.A.'s constitutional complaint is waived.

We overrule M.A.'s sole issue on appeal.

### III. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
18th day of October, 2018.

5